The STATE of Ohio, Appellee,

v.

GLOWACKI, Appellant.

[Cite as *State v. Glowacki* (1999), 131 Ohio App.3d 640.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–97–106.

Decided Feb. 5, 1999.

*Mark Tolles,* for appellee.

*Jeffrey M. Gamso,* for appellant.

KNEPPER, Judge.

This is an appeal from a judgment of the Bowling Green Municipal Court, which found appellant guilty of one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(2). For the reasons that follow, this court reverses the judgment of the trial court.

Appellant sets forth the following assignments of error:

"1. The evidence that appellant knowingly possessed drug paraphernalia was insufficient, as a matter of law.

"2. The verdict of guilty was against the manifest weight of the evidence."

The facts that are relevant to the issues raised on appeal are as follows. On November 18, 1996, Bowling Green police executed a search warrant at The Shed, a store in Bowling Green, Wood County, Ohio, and seized over seven hundred pieces of store inventory. On November 22, 1996, complaints were filed against appellant David Glowacki and against The Shed. Each was charged with four counts of violating R.C. 2925.14(C)(2), which states that "[n]o person shall knowingly sell, or possess or manufacture with purpose to sell, drug paraphernalia, if the person knows or reasonably should know that the equipment, product, or material will be used as drug paraphernalia." On February 20, 1997, both defendants moved to amend the complaints to remove the words "or reasonably should know" from each count. On May 22, 1997, the trial court found the language unconstitutionally vague and the motion was granted.

On August 8, 1997, the case came to trial and the following relevant evidence was presented.

Jason Stanley, a patrolman for the Bowling Green Police Division, testified that on November 18, 1996, he was a uniformed officer assisting the detective division in executing a search warrant at The Shed. Stanley stated that he helped the detectives count and catalog items that had been seized. Stanley also identified numerous exhibits as items he had seized and catalogued.

Thomas Brocamp testified that on November 18, 1996, he was employed by the Bowling Green Police Department as a lieutenant in the detective division. Brocamp testified that on that date he executed a search warrant at The Shed in Bowling Green. Brocamp identified Exhibits One through Twenty-nine as items seized from The Shed and said that the items were seized as drug paraphernalia. The items seized included five hundred ninety-two pipes of various designs, ninety-five wooden "smoking systems," thirty-one small scales, and two books, entitled "Closet Cultivator" and "Marijuana Grower's Guide." Brocamp stated that, based on his knowledge of the local drug culture and on arrests he has made over the past twenty-five years, out of all of the items seized the only ones that would have uses other than as drug paraphernalia were the postal scales and some pens. Brocamp further testified that appellant appeared at the time of the search and identified himself as the owner of the store. Brocamp testified that he believed the items seized were being offered for sale because they were set out in glass display cases and most of the items had prices on them. He further testified that appellant did not at any time deny that either he or the store owned the items seized. Brocamp also identified seventeen photographs taken of items in the store at the time of the search. Brocamp testified that there were signs posted in the store indicating that the items for sale were for use only with tobacco. He further stated that there were no signs in the store indicating that the pipes for sale were not intended for use with marijuana or other drugs of

abuse and were for use solely with tobacco. He stated that he recalled a small display of prepackaged pipe tobacco near the cash register.

The state rested its case and the defense moved for a judgment of acquittal as to both defendants. The trial court denied the motion and the defense called two witnesses.

Michael Mulholland testified that he is currently employed by Glow Industries as manager of The Shed in Bowling Green and that on November 18, 1996, he was employed as a clerk at the store. He stated that in addition to the items seized, the store sells t-shirts, posters, and general miscellaneous items. Mulholland testified that the items seized from the store constitute a very small percentage of the total merchandise. He said that there is a sign posted in the store stating that merchandise is "for tobacco use only." He further testified that it is store policy to shut down a sale if it becomes apparent that an item is being purchased for use with marijuana or other controlled substances.

Stuart Silber testified that for forty-five years he owned a company that manufactured smoking pipes and tobaccos as well as the largest pipe and tobacco store and pipe repair service in the world. Silber stated that he had examined the state's exhibits and that all of the pipes were suitable for smoking tobacco and herbal products.

On September 16, 1997, the trial court found that the state had incorrectly brought charges against The Shed, as opposed to Glow Industries, Inc., the entity that owns the store, and found The Shed not guilty on all counts. The trial court further found that, based on the testimony of Detective Brocamp and the design and manner in which the items were displayed in the store, the items were sold principally for use with contraband such as marijuana and cocaine and that the items fit the definitions of drug paraphernalia found in R.C. 2925.14(A)(5) and (A)(12). The trial court stated that the signs and store policies about which Mulholland testified actually pointed to appellant's awareness of the probability that the items for sale would be used for ingesting controlled substances. The court granted appellant's motion to merge the counts and found him guilty of one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(2).

In his first assignment of error, appellant asserts that the state's evidence was insufficient to show that he had actual or constructive knowledge of any drug paraphernalia that might have been in the store or of the items' prospective uses and that the evidence was insufficient to show that the items seized were in fact drug paraphernalia.

"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Upon review of the sufficiency of the evidence to support a criminal conviction, an

appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2925.14(C)(2) states:

*"No person shall knowingly sell,* or possess or manufacture with purpose to sell, *drug paraphernalia, if the person knows* or reasonably should know *that the equipment, product, or material will be used as drug paraphernalia."* (Emphasis added.)

We note that in response to a pretrial motion the trial court struck the words "or reasonably should know" from each count in the complaint, which meant the state had the burden of proving that appellant knew that the items seized would be used as drug paraphernalia.

R.C. 2901.22(B) states:

"[A] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. *A person has knowledge of circumstances when he is aware that such circumstances probably exist."* (Emphasis added.)

In order to affirm the trial court's judgment, this court must conclude that any rational trier of fact could have found the essential elements of R.C. 2901.22(B) proven beyond a reasonable doubt, that is, we would have to find that the evidence admitted at appellant's trial, if believed, would convince the average mind that appellant knew that the items he sold would be used as drug paraphernalia.

In reviewing a conviction based on R.C. 2925.14(C)(1), possession of drug paraphernalia, the Second District Court of Appeals noted:

"R.C. 2925.14(C)(1) imposes a dual requirement of proof on the state. First, it must prove that the defendant knowingly possessed drug paraphernalia, that is, that the article was drug paraphernalia and that the defendant who possessed it knew it to be that. Second, the state must prove that the defendant intended to use the paraphernalia to ingest illegal drugs." *State v. Smith* (Jan. 7, 1994), Clark App. No. 3013, unreported, 1994 WL 43105.

Although the defendant in *Smith* was charged with possession of drug paraphernalia under paragraph (C)(1) of R.C. 2925.14 and the appellant in this case was charged with possession of drug paraphernalia with intent to sell under

paragraph (C)(2) of the same statute, the requirements of proof are analogous. The state in this case was charged with proving that appellant knowingly sold or possessed with purpose to sell drug paraphernalia and that he knew that the items would be used as drug paraphernalia.

█ In support of its claim that the items seized were drug paraphernalia, the state's only evidence consisted of the testimony of Officer Brocamp, who stated that, based on his years of experience as a police officer, the only items that had uses other than as drug paraphernalia were the scales and pens. The defense presented the testimony of Stuart Silber that the pipes confiscated were suitable for use with ordinary tobacco products. Based on the foregoing, this court finds that the state failed to prove beyond a reasonable doubt that the items for sale in The Shed were drug paraphernalia.

█ This court has thoroughly reviewed the record of proceedings in the trial court and we find that even if we were to accept, *arguendo*, that appellee did present proof beyond a reasonable doubt that the items seized were drug paraphernalia, we would still have to reverse appellant's conviction. The trial court stated in its judgment entry that it was not required to ignore its common sense. "Common sense," however, is not a sufficient basis upon which to find a person guilty of committing a crime. We find, after a careful review of the evidence presented by the state, that there was no evidence that appellant knew that customers of The Shed would use the items seized as drug paraphernalia. In fact, there was no evidence as to appellant's awareness or state of mind in connection with any aspect of the merchandise in the store. Accordingly, we find that the evidence presented at trial was insufficient for a rational trier of fact to find that appellant knowingly sold drug paraphernalia and knew that the items seized from his store would be used as drug paraphernalia. Appellant's first assignment of error is well taken.

█ In his second assignment of error, appellant asserts that the verdict was against the manifest weight of the evidence.

Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547, quoting Black's Law Dictionary (6 Ed.1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting

testimony." *Id.* at 387, 678 N.E.2d at 546–547, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661–662.

To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.,* quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. *Id.*

Based on a review of the evidence presented at trial and our finding as to appellant's first assignment of error, we find that the trier of fact clearly lost its way and created a manifest miscarriage of justice, and appellant's conviction was against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is well taken.

On consideration whereof, this court finds that appellant was prejudiced and the judgment of the Bowling Green Municipal Court is reversed and appellant's conviction is vacated. Court costs of this appeal are assessed to appellee.

*Judgment reversed.*

MELVIN L. RESNICK and SHERCK, JJ., concur.